The **FIRST NATIONAL BANK OF MAYFIELD, Executor of the Will of Ed Gardner, Deceased, Appellant,**

v.

**Bunk GARDNER, Jr., Appellee.**

Court of Appeals of Kentucky.

Feb. 28, 1964.

Charles I. Dawson, Edwin F. Schaeffer, Jr., Louisville, David R. Reed, Paducah, L. M. Tipton Reed, Mayfield, for appellee.

DAVIS, Commissioner.

This appeal presents another facet of the litigation which has arisen incident to the will and codicils of the late Ed Gardner. Some of the pertinent background may be had by reference to four previous decisions of this court relating to other phases of the matter: Commonwealth ex rel. Ferguson v. Gardner, Ky., 327 S.W.2d 947; First National Bank of Mayfield v. Stahr, Ky., 329 S.W.2d 582; First National Bank of Mayfield v. Gardner, Ky., 330 S.W.2d 409; and First National Bank of Mayfield v. Lisanby, Ky., 354 S.W.2d 32.

Appellant instituted this action in the Graves Circuit Court seeking recovery of $38,928.01 alleged to have been spent by it in order to ascertain and demonstrate to the satisfaction of the Graves County Court that a purported codicil to the will of Ed Gardner was a forgery. Appellee's motion to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted was sustained by the trial court. CR 12.02. The sole question is whether the complaint does allege facts which would entitle the appellant to relief.*

The allegations of the challenged complaint are embraced in thirteen numbered paragraphs which we summarize as follows:

Appellant is the qualified executor of Ed Gardner, and a nine-page will and a one-page codicil were admitted to probate June 12, 1958, by the Graves County Court as the last will of Ed Gardner. On January 4, 1959 (about seven months after the probate of the Gardner will) an unstamped letter was found in the mailbox of C. C. Wyatt, Jr., dated May

James W. Stites, S. Russell Smith, Edwin H. Perry, Louisville, Malcolm R. Boaz, Mayfield, for appellant.

---

* The propriety of the failure of the trial judge to vacate the bench was raised, but it is not necessary to advert to it since another judge will preside over further proceedings.

18, 1958, and purportedly signed by the decedent, Ed Gardner. This letter is referred to as the "Dear Charles" letter. The text of the "Dear Charles" letter informed Wyatt that Ed Gardner had on January 8, 1952, written a codicil to his will and secreted it between bricks of an open-air wishing well at his home. The letter directed Wyatt to go to the well, in the company of three other persons, where he would find the codicil unless it had been found earlier or carried away by animals.

Wyatt followed the letter's instructions on January 4, 1959, and did find an instrument purporting to be a codicil to the will of Ed Gardner. The paper was dated January 8, 1952, and is referred to as the "wishing well" codicil. The two persons whose names appeared as subscribing witnesses on the "wishing well" codicil had died before May 18, 1958, the date of the "Dear Charles" letter. The provisions of the "wishing well" codicil substantially increased the benefits to appellee, Bunk Gardner, Jr., in the Ed Gardner estate. Wyatt delivered the "wishing well" codicil to appellant on January 4, 1959.

Bunk Gardner, Jr., either forged or conspired and confederated with others to forge both the "Dear Charles" letter and the "wishing well" codicil, and he uttered, caused the same to be uttered or knowingly permitted them to be uttered, for the purpose of defrauding the estate of Ed Gardner and the beneficiaries named by Ed Gardner in his will.

Appellee "knowingly permitted his father, Bunk Gardner, Sr., to apply to the Graves County Court and obtain an order on January 21, 1959, directing the plaintiff and its Trust Officer to show cause, if any they have or can, why the purported ('wishing well') codicil should not be admitted to record." Bunk Gardner, Jr. "further permitted" his father to issue a statement to the press in Mayfield in which he proclaimed his belief in the authenticity of the "Dear Charles" letter and the "wishing well" codicil.

Appellee also asserted that the "wishing well" codicil was genuine, and he instituted legal proceedings based on that assertion. The legal proceedings so instituted consisted of the filing by appellee, on January 22, 1959, of a verified pleading in the Graves County Court in which "he complained about the plaintiff's refusal to produce the 'wishing well' codicil in court for probation as well as the alleged refusal of the plaintiff to permit his [appellee's] attorney * * * to see that forged codicil * * *" Appellee demanded an order of the Graves County Court requiring appellant to produce and file with the court the "wishing well" codicil as well as the "Dear Charles" letter so that the documents could be taken to Chicago for laboratory examination. On January 22, 1959, appellee filed a verified pleading in the county court in which he said that he believed the letter and codicil to be genuine, and that he was bolstered in the belief by expert advice obtained by him from document witnesses of national reputation. At no time between January 4, 1959, and March 30, 1959, did the appellee, or his attorneys, advise or inform appellant that both the letter and codicil were forgeries.

On March 20, 1959, the appellant obtained from the Graves County Court an order requiring appellee to show cause why the "wishing well" codicil should be admitted to probate. In retort to the show cause order appellee asked time in which to file a response, but did not disclose that he believed the letter and codicil to be spurious. However, on March 30, 1959, appellee "confessed" that the "Dear Charles" letter and the "wishing well" codicil were forged instruments. Then the Graves County Court adjudged that the "wishing well" codicil was "absolutely spurious, a forgery, not a genuine instrument and is null and void and of no effect."

Next, the complaint declares that "as a direct and proximate result of the facts set forth * * * the plaintiff was required to employ counsel to defend the proceedings instituted in the Graves County Court by Bunk Gardner, Sr. and * * * Bunk Gardner, Jr., and to conduct an exhaustive and expensive investigation with respect to the genuineness and validity * * *" of the questioned letter and codicil. Further details of the nature of the expenses entailed for these purposes are set out in the complaint, and the claim for damages is laid in the sum of $38,298.01, the amount claimed to have been expended to defend the proceedings and establish the invalidity of the documents.

The final paragraph of the complaint is:

"13. The defendant, Bunk Gardner, Jr., is liable in fraud and deceit to the plaintiff in the amount of $38,298.01, that being the amount of damages sustained by the plaintiff as set forth in paragraph 12 next above."

The just quoted paragraph has particular significance in that the parties argued the case to the trial judge on the concept of a cause of action in fraud and deceit. They recognized the six elements of that common law action as set forth in Crescent Grocery Co. v. Vick, 194 Ky. 727, 240 S.W. 388. The trial judge was of the view that all elements of the cause were alleged except the vital element of "reliance." On appeal the appellants continue to rely on the common law action for fraud and deceit, but urge an additional ground:

█ It is contended that the alleged activities of appellee constitute a charged violation of KRS 434.130(1). Then attention is directed to KRS 446.070, which provides a person injured by violation of a statute may recover from the offender damages sustained by the violation.

Appellee vigorously contests the right of appellant to present any new argument in this court. We are invited to examine Tipton v. Brown, 273 Ky. 496, 117 S.W.2d 217, and Holloway v. Brown, 181 Ky., 716, 205 S.W. 925, along with other cited cases, as sustaining the appellee's point of view that nothing may be argued here that was not argued below. Our examination of those authorities does not impel us to that conclusion.

In 5 Am.Jur.2d, Appeal and Error, §§ 545 and 546, pp. 29–31, is found a general text recognizing that appellate courts normally consider only the questions which were raised and reserved in the lower court. It is there noted that the reviewing court will consider the case only upon the theory upon which it was tried in the lower court. The same authority points out, however, that adherence to the theory relied on in the trial court does *not* mean that the parties are limited to the same reasons or arguments advanced below. This court may accept and consider reasons and arguments which were not presented to the trial court.

The sole issue before the trial court was whether the complaint did state facts upon which relief could be granted. As noted, by paragraph 13 of the complaint, the pleader sought to fix a label to the cause of action, and entitled it "fraud and deceit." But the name or title ascribed to the cause of action is not controlling.

In the celebrated case of Prewitt v. Clayton, 21 Ky. (5 T.B.Mon.) 4, this court, through Chief Justice Bibb, observed:

"A bear well painted and drawn to the life is yet the picture of a bear, although the painter may omit to write over it, 'this is the bear.'"

By parity of reasoning, the bear does not lose its basic characteristics if the artist dubs it a horse. The complaint sought recovery; it alleged facts upon which that recovery was predicated; the motion to dismiss was for failure to state a claim upon which relief can be granted. The issue is whether the facts stated warrant relief—

not whether the relief demanded happens to bear the name of "trespass" or "fraud" or "malicious prosecution."

██ It is our conclusion that the complaint does state facts upon which relief may be granted. We do not decide whether it falls within the framework of "fraud and deceit" as delineated in Crescent Grocery Co. v. Vick, supra; neither do we rest our decision upon the theory of statutory redress arising from the forgery statute and KRS 446.070, discussed earlier. We hold that the complaint is adequate to warrant recovery upon the common law principles applicable to civil malicious prosecution.

In Restatement of the Law, Torts, § 674, it is said:

"One who initiates or procures the initiation of civil proceedings against another is liable to him for the harm done thereby, if

(a) the proceedings are initiated

(i) without probable cause, and

(ii) primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings are based, and

(b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

We have adhered to the principles thus stated in earlier cases. Cf. Woods v. Finnell, 76 Ky. (13 Bush) 628. In that well-considered opinion Judge Pryor succinctly premised the rationale of the court's ruling when he wrote:

"The fact that a plaintiff has been subjected to the payment of costs per falso clamore, is no recompense to the defendant when the latter has, by reason of the malicious proceedings on the part of the plaintiff, sustained damage."

In Woods, supra, we recognized that the narrow bases which had developed in civil malicious prosecution cases stemmed from the enactment of the statute of Marlbridge, giving the defendant his costs if the plaintiff's case failed. Since the Marlbridge statute allowing litigation costs and expenses (including counsel fees) does not obtain, the reasons for constricting the common law view have vanished. As observed by Judge Pryor in the Woods opinion:

"* * * for at common law, prior to that enactment, [Marlbridge statute] such actions could be maintained whether the property of the defendant was seized or not, or whether he had incurred expenses in defending it * * *." Op cit. p. 632 of 76 Ky. (13 Bush).

As recently as Smith v. Smith, 296 Ky. 785, 178 S.W.2d 613, we reaffirmed allegiance to the principles as proclaimed in the Restatement of the Law and in Woods v. Finnell, supra.

Examination of the complaint discloses that its allegations fall within the framework prescribed by the just quoted authorities. According to the complaint, appellee either forged the "Dear Charles" letter and the "wishing well" codicil, or he conspired with others to forge them. Moreover, the complaint says that he "uttered, caused the same to be uttered or knowingly permitted them to be uttered, for the purpose of defrauding the estate of Ed Gardner * * *" and the beneficiaries of the Gardner estate.

██ We accept the allegations of the complaint as true for the present purpose of testing the sufficiency of the complaint. In so doing we find that appellee "forged" the instruments, or alternatively, that he conspired with others to do so. He "uttered" them, or caused their utterance, knowing them to be forged, and for the express purpose of defrauding the Gardner estate and its beneficiaries. According to the complaint, appellee instituted legal pro-

ceedings looking toward the judicial acceptance of these spurious documents.

May these activities of appellee be said to come within the elements laid down in Woods v. Finnell, supra? There we said that it must appear that the action was founded in malice, instituted without probable cause, and that the plaintiff was damaged.

If appellee knew, as the complaint charges, that the documents were forged, and deliberately sought to cause them to be authenticated to defraud the Gardner estate for his own benefit, it was done with malice. Malice is said to be the intentional doing of a wrongful act without legal justification or excuse. Cf. Wright v. Commonwealth, Ky., 335 S.W.2d 930, and Words and Phrases "Malice", 1963 Supplement.

Was the legal proceeding instituted without probable cause? Certainly no probable cause could be legally anchored on a knowingly forged codicil. Appellee may have thought he had a probability of success—but not probable cause; he knew, according to the complaint, that the entire case was founded on the quicksand of forgery. It would mock the law to say that a litigant may ascribe probable cause to a proceeding based upon a known forgery.

■ But was there a legal action instituted? We hold that there was. In the Restatement of the Law, Torts, § 674, it is written:

"The person who initiates civil proceedings, is the person who sets the machinery of the law in motion whether he acts in his own name, or in that of a third person, or whether the proceedings are brought to enforce a claim of his own, or that of a third person."

Appellee set the machinery of the law in motion here. KRS 434.280 denounces as felonious the fraudulent destruction or concealment of a will or codicil with intent to prevent probate. The actions of appellee, according to the complaint, put the "wishing well" codicil in appellant's hands as an authentic document. Appellant was then in the position to probate the codicil or show why it refused. Appellee filed verified pleadings in the Graves County Court with a view to compelling action by the appellant. Under the particular circumstances of this case, these activities may be equated with the institution of legal action.

The final element required is damage to the appellant proximately flowing from the appellee's alleged activity. It is manifest that the complaint properly alleges damage. There is no policy of law which would preclude recovery of reasonable expenditures required to thwart the malicious action taken without probable cause.

The judgment is reversed for proceedings consistent with this opinion.

MONTGOMERY, J., dissenting.