Roger McMASTER, et al.,
Plaintiffs-Appellants,

v.

CABINET FOR HUMAN RESOURCES,
et al., Defendants-Appellees.

No. 86–5606.

United States Court of Appeals,
Sixth Circuit.

Argued April 2, 1987.

Decided July 29, 1987.

Kenneth L. Sales, argued, Sales, Isenberg, Sales, Stewart, and Cutler, Louisville, Ky., for plaintiffs-appellants.

Daniel F. Egbers, argued, Cabinet for Human Resources, Frankfort, Ky., for defendants-appellees.

Before WELLFORD and NELSON, Circuit Judges, and COHN, District Judge.[*]

COHN, District Judge.

I.

This is an action pursuant to 42 U.S.C. §§ 1983 and 1985 claiming violation of substantive due process rights because of malicious prosecution. Also involved are pendent state claims for malicious prosecution and, apparently, for defamation and intentional infliction of mental distress.

Appellants (one deceased), plaintiffs below, worked for the Cabinet for Human Resources, a Kentucky agency responsible in part for the care of juvenile delinquents. Following a highly publicized death of a juvenile under questionable circumstances,

* Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

they were suspended "for cause" on January 18, 1983, pursuant to the grounds and procedures set forth in Ky.Rev.Stat. § 18A.095; 101 Ky.Admin.Reg. 1:120 §§ 1, 3, and 7. Their letters of suspension also announced their dismissal effective February 1, 1983. Pursuant to state regulations, 101 Ky.Admin.Reg. 1:120 § 3(3), they invoked their pre-dismissal statutory right to have their counsel meet with their department head (plaintiffs themselves chose not to be present) to persuade him to revoke the decision to dismiss. He declined to do so.

Pursuant to the statute, plaintiffs then appealed to the state personnel board seeking reinstatement. 101 Ky.Admin.Reg. 1:130. Plaintiffs' action was for "reinstatement," not a final determination on their dismissal. Plaintiffs concede that their dismissal was an act complete in itself without any approval required by the state personnel board. The state personnel board ruled for plaintiffs on June 29, 1983, awarding reinstatement and full back pay. After the state personnel board ruled for plaintiffs, defendants (plaintiffs' employer—also known as the "appointing authority" under the statute—and various state agents alleged to have conspired to dismiss plaintiffs) appealed to the state circuit court as allowed by the statute. The circuit court affirmed the personnel board on October 6, 1983.

On June 15, 1984, plaintiffs brought this action in the federal district court for the Eastern District of Kentucky claiming bad faith conspiracy to dismiss them.[1] They alleged that because their dismissal was pursuant to an administrative scheme for dismissing state employees, the dismissal itself was the institution of proceedings against them that ultimately terminated in their favor—the quintessential element for actions for malicious prosecution. Plaintiffs do not characterize their appeal to the personnel board as the institution of proceedings; rather, they argue that they were required under the statutory scheme to follow through on a process already instituted by defendants. Thus, they characterize the act of dismissal as the institution of a malicious prosecution and go on to characterize defendants' appeal to the state circuit court as the continuation of proceedings without probable cause.

Defendants moved for dismissal or summary judgment on a variety of grounds, including Eleventh Amendment immunity, res judicata, and collateral estoppel. The district court ruled that the mere dismissal of state employees, despite a statutory scheme providing a procedure for dismissal, does not constitute the institution of proceedings. Thus, the district court ruled that they failed to state a claim for malicious prosecution. Alternatively, the district court held that plaintiffs' section 1983 claim was time-barred under Kentucky's analogous one-year statute of limitations for personal injury actions, Ky.Rev.Stat. § 413.140, since they failed to file their action within one year of their dismissal. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1985).

Plaintiffs appeal dismissal of the section 1983 substantive due process claim based on malicious prosecution. They have not argued their section 1985 or equal protection claims on appeal. They do not dispute that the district court could properly have dismissed their pendent state claim, if any, after the federal claims were dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiffs never claimed denial of procedural due process and concede that defendants complied with the statutory procedures for dismissing them. Nor have

---

1. Plaintiffs concede that an appeal to the state personnel board was not their only remedy to challenge their dismissal and that they could have claimed violation of the federal civil rights laws at the outset. Nevertheless, plaintiffs argue that they were required to pursue all their state claims before filing in federal court, since only the state personnel board and circuit court could make a determination of whether their dismissal was without probable cause, an element of their section 1983 claim. We reject this argument. It sounds of the ill-fated principle of exhaustion of state remedies. *See Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

plaintiffs claimed substantive due process violations based on the operative act of dismissal. Plaintiffs apparently framed their claim as one analogous to malicious prosecution in an attempt to avoid the preclusive effect of Kentucky's one-year statute of limitations, which had already effectively barred any claims based on and measured from the operative act of dismissal some sixteen months earlier.[2]

## II.

The parties agree on several points. First, they agree that state tenured employees have an interest, protected by the United States Constitution, in retaining their jobs absent compliance with the fundamental requirements of due process. They also agree that malicious prosecution may, in an appropriate case, support a section 1983 action and that malicious prosecution may apply to the institution of administrative proceedings, rather than the narrow common-law view that the tort applied only to strictly judicial proceedings. They further agree that *Wilson v. Garcia, supra,* requires a federal court in a section 1983 action to look to the analogous state cause of action for personal injuries to ascertain the applicable statute of limitations. Lastly, they agree that the relevant statute of limitations in Kentucky required that plaintiffs file their section 1983 claim within one year of accrual of their cause of action.

While the parties disagree about when the statute of limitations commenced running,[3] we need not decide this issue. Construing the complaint favorably to plaintiffs, as we must in considering a motion to dismiss, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Dunn v. State of Tennessee,* 697 F.2d 121, 125 (6th Cir.1982), *cert. denied sub nom. Wyllie v. Dunn,* 460 U.S. 1086,

103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), it is abundantly clear that plaintiffs have failed to state a claim for malicious prosecution under section 1983.

## III.

### A.

 While we review only the dismissal of the federal claim, the parties have nonetheless discussed the section 1983 claim throughout in terms of analogy to the common law tort of malicious prosecution. Section 1983 is a creature of federal statute and does not depend for its existence on the definition of similar state causes of action. The Supreme Court reaffirmed in *Wilson v. Garcia, supra,* that federal law and not state law is relevant for purposes of characterizing a section 1983 claim. 471 U.S. at 268–71, 105 S.Ct. at 1943–44. Nonetheless, where a section 1983 claim is essentially for deprivation of civil rights through malicious prosecution, we look to common law elements of a malicious prosecution claim in judging the merits of the section 1983 action. *See Dunn, supra,* 697 F.2d at 125 n. 4 (adopting definition of malicious prosecution of state in which claim arose); *Lucsik v. Board of Educ. of Brunswick City School Dist.,* 621 F.2d 841, 842 (6th Cir.1980).

The elements of malicious prosecution in Kentucky are:

(1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the

---

**2.** The district court's judgment dismissing the case asserted that plaintiffs failed to state a claim. Fed.R.Civ.P. 12(b). The technical basis for dismissal was that plaintiffs' action was barred by the relevant statute of limitations. This suggests that had plaintiffs filed a claim measured from the time of their dismissal, they might have stated a claim. We need not speculate as to whether plaintiffs could have successfully stated some other type of claim had

they filed at an earlier date. We ground our decision not on the statute of limitations, but rather on plaintiffs' failure to state a claim.

**3.** Defendants argued to the district court that the relevant date is the date of plaintiffs' dismissal, while plaintiffs argued for the date the state circuit court affirmed the personnel board.

suffering of damage as a result of the proceeding. *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). Because the tort of malicious prosecution was disfavored at common law, the prerequisites for maintaining the action are "strict." *Id.*

A wide variety of judicial and executive-branch actions related to law and its enforcement will support a cause of action for malicious prosecution where there is injury to "person" or "economic livelihood" in some sense. *See* W. Prosser & W. Keeton, *The Law of Torts* § 120, at 890–91 (5th ed. 1984). Defendants concede that Kentucky and other jurisdictions have rejected a distinction between administrative proceedings and judicial or quasi-judicial proceedings. *See* 52 Am.Jur.2d, *Malicious Prosecution* § 7, at 191, § 20, at 198 (1970). The relevant issue in this case is what constitutes the institution of proceedings.

The test in Kentucky for instituting (also variously described as "initiating" or "instigating") proceedings is whether the defendant "sets the machinery of the law in motion...." *First Nat'l Bank of Mayfield v. Gardner*, 376 S.W.2d 311, 316 (Ky. 1964) (quoting Restatement of Torts (First) § 674 comment a (1938)); *accord Seidel v. Greenberg*, 108 N.J.Super. 248, 260 A.2d 863, 868 (1969). Plaintiffs correctly note that a wide variety of conduct may constitute the "institution," "initiation," or "instigation" of proceedings, both under Kentucky law and the common law generally. *See generally* Prosser & Keeton, *supra* § 119, at 871–73.

Plaintiffs do not offer convincing support, nor do we think such exists, for their view that malicious prosecution will lie where a defendant acts in a way that requires the plaintiff to institute proceedings to vindicate his rights. The tort of malicious prosecution is based upon conduct by the defendant that directly results in judicial or quasi-judicial conduct against the plaintiff. Defendants correctly point out that they did not set the machinery of the statute in motion merely by issuing the letters dismissing plaintiffs. The statute and regulations place the burden on employees who are adversely affected to invoke the legal machinery guaranteed by the statutory scheme.[4] The employer does not file charges against the employee but is merely required to set forth the reasons for the dismissal or suspension in a letter to the employee.[5] The stated reasons must withstand scrutiny only if the employee invokes the statutory process by requesting a hearing and appealing to the state personnel board and circuit court, if necessary.

The only case cited by plaintiffs that arguably supports their position is *Hardy v. Vial*, 48 Cal.2d 577, 311 P.2d 494 (1957), which upheld a state employee's claim for malicious prosecution where the defendants had conspired to file false charges resulting in a disciplinary hearing and dismissal. *Hardy* does not differ, however, from the ordinary rule that the instigation or actual filing of charges to a proceeding will support a cause of action for malicious prosecution. Here, plaintiffs were effectively dismissed under the statute without the need for charges or any proceeding.

Plaintiffs' argument would stand the law of malicious prosecution on its head. By plaintiffs' reasoning, a successfully challenged wrongful dismissal from a job subject to a collective bargaining agreement, for example, would support not only the standard claims against the employer or union or both, but also a claim for malicious prosecution because the employee invoked internal administrative or judicial proceedings for reinstatement or compen-

---

**4.** *See Goss v. Personnel Board*, 456 S.W.2d 819, 822 (Ky.1970) (noting that it is the discharged *employee* who "initiates" the proceedings allowed by the statute.)

**5.** The regulations use both the words "reasons" and "charges." Kentucky Supreme Court opinions interpreting the statute make it clear that the words are synonyms. *See Goss v. Personnel Board, supra; see also King v. Sermonis*, 481 S.W.2d 652 (Ky.1972). Thus, the sometime use of the word "charges" in the regulations does not convert the dismissal letter of the appointing authority (i.e., the employer) into the institution or initiation of legal proceedings.

sation. Similarly, every successful defamation case would support a parallel cause of action for malicious prosecution because the plaintiff is also entitled to institute proceedings to redress injury to his reputation.

Malicious prosecution relates to resort to procedure for abusive purposes. Where a plaintiff complains of other conduct, even conduct requiring the plaintiff to institute proceedings to reverse the effect of a defendant's conduct, the plaintiff must assert a cause of action premised directly on the underlying conduct.

### B.

■ While it is probative that plaintiffs failed to state a claim for malicious prosecution under Kentucky law, such a finding is not dispositive of their section 1983 claim. As noted above, although state law may be considered to the extent it is not inconsistent with federal law, federal law controls for purposes of characterizing section 1983 claims. Thus, one leading commentator on civil rights litigation has suggested that courts' discussion of section 1983 malicious prosecution claims misleads because it tends to focus on tort-laden terminology, to the neglect of constitutional analysis. *See* S. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983*, § 3.10, at 154–56 (2d ed. 1986); *see also* Whitman, *Government Responsibility for Constitutional Torts*, 85 Mich.L.Rev. 225 (1986) (discussing the inadequacy of traditional tort doctrine to decide section 1983 claims involving conduct by government entities). However, application of federal principles leads to the same conclusion.

The test for substantive due process claims is whether defendants' conduct "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). We have previously measured section 1983 malicious prosecution claims by this standard. *E.g., Vasquez v. City of Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985). Where we have recognized a possible section 1983 claim, the circumstances have uniformly involved situations of arrest, incarceration, or charges of violation of non-traffic laws. *See Dunn, supra* (malicious prosecution claim following arrest); *Lucsik, supra* (suggesting incarceration for civil contempt may give rise to section 1983 claim if malice alleged). Also, the courts that have recognized that malicious prosecution may support a section 1983 claim are virtually unanimous in holding that constitutional protection exists only with respect to criminal proceedings and not to civil proceedings. M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses and Fees* § 3.6, at 50 & n. 6 (1986); *see also* S. Nahmod, *supra*, § 3.10, at 155 nn. 181–82 (collecting cases).

In the past, we have declined to recognize a section 1983 claim analogous to malicious prosecution where the plaintiff was never "in danger of imprisonment." *Vasquez, supra*, 757 F.2d at 773 (allegation of police harassment for issuance of traffic citations); *see also Bacon v. Patera*, 772 F.2d 259 (6th Cir.1985) (no substantive constitutional protection against harassment through misuse of state's prosecutorial machinery, even if loss of employment results). *Cf. Garner v. Stephens*, 460 F.2d 1144 (6th Cir.1972) (applying Kentucky law) (noteworthy that public employee's section 1983 action for suspension from employment not treated as analogous to malicious prosecution claim). Even an arrest that will support a state law claim for malicious prosecution will not necessarily rise to the level of a constitutional tort redressable under section 1983. *Fiser v. Bowling*, 812 F.2d 1406 (6th Cir.1987) (dismissing plaintiff's section 1983 claim following arrest for driving while intoxicated). As we noted in *Dunn, supra*, "Neither the Fourteenth Amendment nor 1983 were designed to redress all injuries incurred by reason of unfounded or malicious claims brought in state court actions." 697 F.2d at 125.

Because plaintiffs were never subjected to the possibility of incarceration, they failed to state a claim for violation of substantive due process. Dismissal simply does not "shock the conscience." We do not believe Congress intended section 1983 to apply to every claim of dismissal from

employment without probable cause, at least where plaintiffs can point to no other invidious reason for their dismissal, such as race or political beliefs or other status or conduct protected by the Constitution or federal statutes.

For the foregoing reasons, we AFFIRM the district court.[6]

DAVID A. NELSON, Circuit Judge, concurring.

I fully agree with the court's disposition of the "malicious prosecution" claim, but I write separately to state my views on certain issues that the court did not reach.

The court's opinion suggests that "plaintiffs [have not] claimed substantive due process violations based on the operative act of dismissal." The plaintiffs' complaint, however, which alleges that employees of Kentucky's Cabinet for Human Resources, acting under color of state law, willfully and maliciously and conspiratorially dismissed the plaintiffs from their state jobs knowing that there was no just cause for doing so, appears to me to have been intended to assert a "substantive due process" claim of a type recognized in *Russell v. Harrison*, 736 F.2d 283, 288 (5th Cir. 1984), and *Barnett v. Housing Authority*, 707 F.2d 1571, 1577 (11th Cir.1983). As the plaintiffs state in their opening brief, "[t]he manner of [the plaintiffs'] dismissal from their employment clearly violated the requirements of substantive due process." The plaintiffs repeat this claim in the next paragraph of their brief: "the Defendants ... maliciously conspired together to terminate [Plaintiffs'] protected property interest. * * * This was a patent violation of the requirements of substantive due process."

The mere fact that the theory is asserted, of course, does not mean that it has any merit. Conspiratorial termination of the supposed "property interest" in public employment would not constitute a denial of "substantive due process" under any interpretation of the Fourteenth Amendment with which I am familiar, absent the infringement of some "fundamental" right that the plaintiffs have failed to mention. *Illinois Psychological Association, et al. v. Marshall Falk, et al.*, 818 F.2d 1337, 1342 (7th Cir.1987); *Brown v. Brienen*, 722 F.2d 360, 366–67 (7th Cir.1983), 368–69 (Flaum, J., concurring).

Even if the plaintiffs could somehow persuade us that they might once have had a justiciable "substantive due process" claim, however, I believe the claim would be barred. Before explaining why, I shall pause to invite consideration of the remedies that were available to the plaintiffs at the point when the dismissal from their jobs became effective, bearing in mind their concession that the procedures followed in their dismissal were not constitutionally defective.

The plaintiffs could have appealed administratively (as they did), and could have tried to persuade the Kentucky Personnel Board that there was no cause for the dismissals under Kentucky law. Alternatively, they could have brought a civil rights action under 42 U.S.C. § 1983 and could have tried to persuade a federal or state court that the dismissals were in violation of federal constitutional provisions that have been interpreted, as Judge Cohn indicates, as prohibiting state action that "shocks the conscience" of the judge by whom the § 1983 action is heard. Such an action would have had to stand or fall on

**6.** There is simply no need to discuss election of remedies or claim preclusion, as suggested by the concurring opinion and as discussed in the divided opinion in *Punton v. City of Seattle*, 805 F.2d 1378 (9th Cir.1986), *cert. denied*, ⎯ U.S. ⎯, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987). Plaintiffs here explicitly grounded their section 1983 claim on the fact that "charges and termination proceedings [were] initiated against them without probable cause. The damages and relief sought is the same as in any other malicious prosecution action." (Plaintiffs' post-hearing brief, at 2). The argument of plaintiffs' counsel at the hearing on their appeal, as well as their post-hearing brief discussing *Punton*, make clear that they do not rely on the operative act of dismissal to state a claim. Their narrowly drawn claim was an obvious effort to avoid pleading an attack on the act of dismissal itself, which would have implicated the Kentucky statute of limitations for personal injury actions, see *supra* pp. 519–20. We should, and do in the majority opinion, respect the narrowness of plaintiffs' claim.

the proposition that the dismissals constituted a denial of "substantive due process," and it is fair to say that at that stage, at least, the plaintiffs' chances of prevailing in a suit based on that "durable oxymoron," as Judge Posner has called it, would be next to nonexistent.

Not surprisingly, the plaintiffs elected not to bring a § 1983 action at the time of their dismissal; they took an administrative appeal to the Kentucky Personnel Board instead. The Cabinet contested the appeal, but lost; the Personnel Board ordered that the plaintiffs be restored to their jobs and "be awarded back pay and emoluments from the date of their suspensions until reemployed...." The Cabinet for Human Resources appealed the Personnel Board's decision to a Kentucky Circuit Court, as permitted by Kentucky law, but lost again. The Cabinet then threw in the towel; although it could have appealed to a higher court, it chose not to.

Only after the Cabinet had thus conceded defeat did the plaintiffs file their action under § 1983. Now, as they saw it, they had an additional argument that the Cabinet's conduct shocked the conscience; not only had the Cabinet discharged them without cause, but it had maliciously defended the dismissals after the plaintiffs appealed, it had maliciously appealed the order of reinstatement entered when the plaintiffs won their administrative appeal, and it had maliciously pursued its appeal until the circuit court affirmed the reinstatement. The plaintiffs thus tried to depict the Cabinet as having engaged in a continuum of malicious misconduct, of constitutional magnitude, that did not end until the Cabinet abandoned the fight after losing its appeal in the Kentucky Circuit Court.

This theory of continuing misconduct (or "malicious prosecution," as plaintiffs have chosen to label it) might be thought not only to add some semblance of muscle to the plaintiffs' "substantive due process" claim, but also, if accepted by the courts, to solve the plaintiffs' one-year statute of limitations problem. Because the judgment of the Kentucky Circuit Court affirming the order of reinstatement preceded the

filing of the § 1983 action by less than one year, while the allegedly wrongful dismissals occurred more than one year before the § 1983 action was filed, the plaintiffs' wrongful dismissal claim would obviously be barred by the statute of limitations unless the courts could be persuaded to accept the malicious prosecution theory. The district court, in a preliminary order, stated that "the court cannot see that the action is one for malicious prosecution." The court saw nothing different after oral argument, and entered a final judgment determining that "this action does not meet the essential requirement of a malicious prosecution type § 1983 action and, therefore, this action is barred by the Statute of Limitations...." Insofar as the plaintiffs were contending that their "substantive due process" rights had been violated by the dismissals themselves, I believe that the district court was correct in concluding that the action was barred by the statute of limitations.

If one were to conclude that the "continuing misconduct" somehow tolled the statute of limitations, I believe there is another reason why the judgment of the district court ought to be affirmed. The plaintiffs having elected to pursue their administrative remedies under state law, and having received the full measure of relief to which those remedies entitled them—*i.e.*, reinstatement with back pay—familiar concepts of claim preclusion would prevent the plaintiffs from suing for the additional million dollars sought here for mental anguish, injury to reputation, legal fees and punitive damages. That, as I read it, is the clear teaching of *Punton v. City of Seattle*, 805 F.2d 1378 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987), and the decisions cited therein.

*Punton* was a case where a Seattle police officer who had been dismissed from his job took an administrative appeal, won an order reinstating him with back pay, and then brought a § 1983 action in federal court seeking damages for emotional distress and attorney fees. The Court of Appeals for the Ninth Circuit held that the judgment recovered by the plaintiff in the

state court was a complete bar to the recovery of any supplemental relief under § 1983:

"Punton's election to proceed initially in the state court amounted to a splitting of his cause of action as well as an election of remedies. At the start, he could have proceeded directly in federal court with a § 1983 claim for reinstatement, back pay, and general damages. Instead, he first chose to seek the relief of reinstatement and back pay in the state court.

\* \* \* \* \* \*

"Punton now represents that he could not have litigated his § 1983 claim in state court, and therefore his § 1983 claim cannot be barred by the claim preclusion effect of his partial recovery under the state judgment. His point does not necessarily follow.

"It is highly unlikely that Congress intended to permit state court vindication of state created property interests to set up offensive collateral estoppel for federal claims brought pursuant to § 1983.

\* \* \* \* \* \*

"We recently held in an employment grievance case originating in California that claim preclusion arising from a state court mandamus action in which substantial but incomplete relief was granted barred relitigation of the claim in federal court under § 1983. *Clark v. Yosemite Community College District*, 785 F.2d 781 (9th Cir.1986).

\* \* \* \* \* \*

"Another instructive case is that of a police officer in Philadelphia who was charged with a crime, discharged from his job, acquitted after trial, and upon application to the municipal Civil Service Commission, reinstated without back pay. *Cohen v. City of Philadelphia*, 736 F.2d 81 (3d Cir.1984). The commission found that whether or not Cohen had participated in the burglary for which he was acquitted, he had violated police department rules by lending money to a superior officer. Cohen thereupon sued in federal court, alleging a § 1983 claim.

Summary judgment for the city was affirmed on the basis of claim preclusion.

\* \* \* \* \* \*

"We have found no Supreme Court case holding that merely because litigation strategy and the perceived advantages of a more adequate award in federal court make it an attractive alternative, a person aggrieved by official state action can abandon a remedy that colorably satisfies due process of law in the state court after recovering substantially what he has lost. On the contrary, *Migra v. Warren City School District Board of Education*, 465 U.S. [75] at 85, 104 S.Ct. [892] at 898 [79 L.Ed.2d 56 (1984)], instructs to the contrary." *Punton*, 805 F.2d 1378 at 1381–83, *passim*.

In a supplemental brief filed after oral argument, the plaintiffs have attempted to distinguish *Punton* on the ground that the state court held that Officer Punton's dismissal—a dismissal effected without a hearing—violated the officer's state and federal procedural due process rights, whereas:

"McMaster and King in this action are not complaining that they were denied procedural due process, or further that they did not receive a full and fair adjudication of their claims in the state administrative proceeding. As the Court is aware from reading the briefs and the vigorous oral argument, Appellants solely rest their claim on a more narrow area of law and assuming [sic] a greater burden than would have been carried under a collateral attack-type proceeding, i.e. a claim that they were denied substantive due process rights by having charges and termination proceedings initiated against them without probable cause. The damages and relief sought is [sic] the same as in any other malicious prosecution action.

\* \* \* \* \* \*

A malicious prosecution action pursuant to 1983 *requires* exhaustion of state remedies and a successful resolution of those state remedies in favor of the one making the claim." (Emphasis by the plaintiffs.)

The plaintiffs might have a point, I think, if they were willing to concede that their § 1983 action rested solely on the claim that the Kentucky Cabinet for Human Resources violated their constitutional rights by maliciously defending its position in the administrative proceedings that the plaintiffs initiated after their discharge and by maliciously prosecuting a first-level appeal from the administrative order reinstating the plaintiffs with back pay. The plaintiffs have made no such concession in their complaint or opening brief, however, at least as I read them, and the supplemental brief quoted above does not strike me as going that far either. To the extent that the plaintiffs contend that the dismissals themselves were unconstitutional, it is immaterial whether they are claimed to have been unconstitutional on procedural due process grounds or on substantive due process grounds; the Commonwealth of Kentucky having restored the plaintiffs to their jobs, as demanded in the administrative proceedings the plaintiffs themselves elected to initiate, the order of reinstatement bars any additional recovery, including recovery of compensatory or punitive damages on account of emotional distress, loss of reputation, or legal expenses incurred in gaining reinstatement.