CORRECTED: SEPTEMBER 22, 2016
RENDERED: SEPTEMBER 22, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky



2014-SC-000373-DG

GARY MARTIN                                                                                                 APPELLANT

DATE 2/16/17 Kim Redmon, DC

ON REVIEW FROM COURT OF APPEALS
V.                 CASE NO. 2012-CA-001961
FRANKLIN CIRCUIT COURT NO. 07-CI-00820


STEPHEN O'DANIEL                                                                       APPELLEE


AND


2014-SC-000389-DG


MIKE SAPP                                                                                          APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                 CASE NO. 2012-CA-001961 ·
FRANKLIN CIRCUIT COURT NO. 07-CI-00820


STEPHEN O'DANIEL                                                                       APPELLEE


AND


2014-SC-000394-DG


BOBBY MOTLEY                                                                              APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                 CASE NO. 2012-CA-001961
FRANKLIN CIRCUIT COURT NO. 07-CI-00820


STEPHEN O'DANIEL                                                                       APPELLEE

## OPINION OF THE COURT BY JUSTICE VENTERS

## AFFIRMING

Appellants, Kentucky State Police officers Gary Martin, Mike Sapp, and Bobby Motley (collectively, the Officers) appeal from the Court of Appeals' opinion reversing the Franklin Circuit Court's summary judgment. Appellants assert the Court of Appeals erred by 1) interjecting federal 42 U.S.C. § 1983 malicious prosecution law into the analysis of a state malicious prosecution claim, and 2) concluding that Appellants are not entitled to immunity from civil liability in a malicious prosecution action. For reasons stated below, we affirm the Court of Appeals but on slightly different grounds, and remand to the Franklin Circuit Court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stephen O'Daniel is a retired Kentucky State Police (KSP) officer. He was employed by the Justice and Public Safety Cabinet as Executive Director of the Office of Investigations when he purchased what was purportedly a 1974 Chevrolet Corvette. After discovering that the vehicle was actually a 1975 Corvette, O'Daniel sought the assistance of Detective Riley of KSP's stolen vehicle division.

Riley confirmed for O'Daniel the vehicle had been stolen in 1981 nearly twenty years before O'Daniel acquired it. Riley also informed O'Daniel that after the owner of the stolen Corvette was paid for the loss by State Farm Insurance Company his ownership interest in the car was transferred to State Farm as a result of the settlement. O'Daniel contacted State Farm to ascertain

2

its interest in the car and was initially informed that State Farm claimed no interest in it.[1]

O'Daniel then contacted the Jessamine County Court Clerk and with her assistance, submitted an application for a new title to the car. Upon review of the application, a Kentucky Department of Transportation title branch manager suspected it may be fraudulent and contacted KSP. A criminal investigation into O'Daniel's application ensued, conducted by Appellants Motley and Martin under the supervision of Appellant Sapp. The Justice Cabinet's General Counsel, Secretary, and Assistant Secretary got involved, apparently in an effort to end the investigation or transfer it to local law enforcement officials. Nevertheless, KSP maintained its control over the case and the officers continued their investigation.

The officers presented the results of the investigation to Franklin County Commonwealth's Attorney, Larry Cleveland. Cleveland expressed doubt about the viability of bringing a criminal charge because proof of criminal intent seemed to be lacking. He declined to prosecute, but citing an unspecified conflict of interest, he asked the Kentucky Attorney General to assign a special prosecutor to review the case. Jefferson County Commonwealth's Attorney, David Stengel, was appointed as special prosecutor. Stengel presented the case, which included Martin's testimony and some of the evidence collected by

---

[1] State Farm later found records pertaining to its payment to its insured for the loss of the car and would later assert a claim to it, leading O'Daniel to file an action in the Jessamine Circuit Court for a declaratory judgment resolving the legal title to the vehicle.

3

the officers, to the grand jury. The grand jury indicted O'Daniel for second-degree forgery in connection with his application to secure a new title for the Corvette. O'Daniel pled not guilty, and the case went to trial. The jury acquitted him, and, soon thereafter, he brought a malicious prosecution action against the officers in the Franklin Circuit Court.

The officers moved for summary judgment seeking dismissal of O'Daniel's complaint, arguing that they were immune from civil suit for their actions, and that as mere witnesses in O'Daniel's criminal case, they were not responsible for the "institution or continuation of original judicial proceedings" as required by *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). They argued that the criminal prosecution of O'Daniel was not conducted "by, or at the instance of" the officers, as required by *Raine*.

The trial court granted summary judgment, holding that since the officers had neither arrested O'Daniel nor filed a criminal complaint against him, and because the special prosecutor had made the ultimate decision to seek an indictment and to proceed with the prosecution, O'Daniel could not establish that the criminal prosecution was instituted "by or at the instance of" the officers, an essential element of the tort of malicious prosecution. The trial court also concluded that summary judgment was required because the officers were shielded from liability for malicious prosecution by the doctrine of immunity as expressed by the United States Supreme Court in *Rehberg v. Paulk*, 132 S. Ct. 1497, 1508 (2012).

4

On appeal, the Court of Appeals reversed the summary judgment and remanded the case to the trial court for further proceedings. We granted discretionary review, and for the reasons set forth herein, we affirm the Court of Appeals.

## II. ANALYSIS

### A. The officers were not entitled to dismissal of the malicious prosecution action on grounds of absolute immunity or qualified official immunity.

We begin this analysis by disposing of the question of whether police officers enjoy the protections of either absolute immunity or qualified official immunity for the activity alleged in O'Daniel's malicious prosecution claim. The trial court upheld the officers' claim of immunity, citing *Rehberg v. Paulk*. *Rehberg* holds that because a grand jury witness's testimony is absolutely privileged, law enforcement officers (or any other grand jury witness) have absolute immunity from lawsuits brought under 42 U.S.C. § 1983 based upon their grand jury testimony. *Id.* at 1506. As explained in *Rehberg*, the scope of immunity available to state government officials in a federal civil rights action under § 1983 derives from the state's common law immunity doctrine. *Id.* at 1502.

Consistent with *Rehberg*, Kentucky's common law protects grand jury witnesses from civil suits predicated upon their testimony. "[I]t is a well-settled rule in practically all jurisdictions that the [false] testimony of a witness given in the course of a judicial proceeding is privileged and will not support a cause

5

of action against him." *Reed v. Isaacs*, 62 S.W.3d 398, 399 (Ky. App. 2000) (quoting *McClarty v. Bickel*, 159 S.W. 783, 784 (Ky. 1913)).

In reversing the trial court, the Court of Appeals held that *Rehberg*'s extension of absolute immunity to law enforcement officers for grand jury testimony applies only in federal civil rights actions brought under § 1983, and has no application to the instant case. We agree that the officers are not immune from O'Daniel's suit but for slightly different reasons.

O'Daniel's claim of malicious prosecution is not predicated simply upon Martin's grand jury testimony and the testimony of Motley and Sapp in O'Daniel's criminal trial. Rather, O'Daniel alleges that the officers engaged in a wide range of activities to encourage and promote the indictment and prosecution of O'Daniel, including the concealment of exculpatory evidence from the prosecutor. The protection afforded to the officers by the doctrine of immunity based upon their privileged testimony does not extend to the other activities upon which O'Daniel's claim of malicious prosecution is based. We are aware of no doctrine that extends absolute immunity to such activities, and notably, the parties have cited none.

The officers also claim they are covered by Kentucky's doctrine of qualified official immunity. We likewise find that defense to be unavailable in a malicious prosecution action but for a more fundamental reason. As explained in *Yanero v. Davis*, qualified official immunity is available only to officials acting in good faith. 65 S.W.3d

6

510, 522 (Ky. 2001) ("[W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment.").

Acting with malice and acting in good faith are mutually exclusive. Malice is a material fact that a plaintiff must prove to sustain a malicious prosecution claim. *Raine*, 621 S.W.2d at 899. But, it is also a fact that defeats the defendant's assertion of qualified official immunity. Official immunity is unavailable to public officers who acted "*with the malicious intention* to cause a deprivation of constitutional rights or other injury . . . ." *Yanero*, 65 S.W.3d at 523 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

It thus becomes apparent that the very same evidence that establishes the eponymous element of a malicious prosecution action simultaneously negates the defense of official immunity. In simpler terms, if a plaintiff can prove that a police officer acted with malice, the officer has no immunity; if the plaintiff cannot prove malice, the officer needs no immunity.

Therefore, in the context of a malicious prosecution claim against state law enforcement officers, the issue of qualified official immunity is superfluous. The same would also be true with respect to any cause of action predicated upon malice instead of negligence or some other basis of liability. We agree with the officers' assertion that qualified official

7

immunity is not limited to negligence actions. But, while *absolute immunity* will prevail even against acts that are maliciously motivated, *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 601 (Ky. 2011), *qualified official immunity* yields to proof that a defendant's actions were malicious. Consequently, when a plaintiff must prove malice to sustain his cause of action, a defense of qualified official immunity has little meaning and no effect.

Here, the officers were not entitled to summary judgment on the grounds of qualified official immunity because they did not show that O'Daniel could not satisfy his burden of proving malice, which is an issue of fact to be decided by the jury and may be inferred, or not, from the absence of probable cause. *Mosier v. McFarland*, 269 Ky. 214, 106 S.W.2d 641, 642–643 (1937).

Accordingly, we affirm the opinion of the Court of Appeals with respect to this issue.

## B. The Court of Appeals correctly reversed the summary judgment but remanded the case for reconsideration under an improper standard.

The Court of Appeals disagreed with the trial court's application of the phrase from *Raine v. Drasin*: "the institution or continuation of original judicial proceedings . . . by, or at the instance of" the officers. As witnesses and investigators, the officers obviously did not "institute" the criminal proceeding against O'Daniel; the grand jury and the prosecutor did. The more difficult consideration is whether the prosecution of O'Daniel was instituted "at the instance of" the officers. The trial court's conclusion that the officers could not

8

be held liable, as a matter of law, for malicious prosecution because they had neither arrested O'Daniel nor sworn out a criminal complaint against him was erroneous. We therefore affirm the Court of Appeals' reversal of the summary judgment. But, we further conclude for reasons set forth below that the Court of Appeals remanded the case with improper directions for reconsideration.

After struggling with the meaning of the "at the instance of" element of malicious prosecution, the Court of Appeals remanded the matter to the trial court with directions to consider the elements of malicious prosecution set forth by the Sixth Circuit Court of Appeals in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010).[2] Of particular interest here is the following holding from *Sykes*:

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that *a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute.*

625 F. 3d at 308 (internal citations and quotations omitted) (emphasis added).

The Court of Appeals also relied upon the decision of the United States District Court for the Western District of Kentucky in *Phat's Bar and Grill v. Louisville Jefferson County Metro Government's*, 918 F. Supp. 2d 654 (W.D. Ky.

---

[2] When the Court of Appeals entered its opinion, *Raine v. Drasin* remained the controlling precedent delineating the elements of malicious prosecution claims in Kentucky. While *Sykes'* rendition of the elements of malicious prosecution in the federal context provides useful context for interpreting and applying *Raine*, it differs from *Raine*. For example, the federal standards cited in *Sykes* do not require proof of malice.

9

2013). In *Phat's Bar*, Judge John G. Heyburn applied Kentucky law in a malicious prosecution claim against a Louisville police officer. Wrestling with the meaning of *Raine*'s "by, or the instance of" language, Judge Heyburn concluded: "The test for determining that the proceedings against plaintiff were 'by, or at the instance, of the officer', is whether the defendant 'sets the machinery of the law in motion.'" *Id.* at 664 (citing *McMaster v. Cabinet for Human Resources*, 824 F.2d 518, 521 (6th Cir. 1987), quoting *First National Bank of Mayfield v. Gardner*, 376 S.W.2d 311, 316 (Ky. 1964)). The plaintiff met the standard by producing evidence of the officer's presence at meetings with the prosecutor suggesting he had "aided in the prosecution's decisions" and thereby "participated in the decision to prosecute." *Id.* at 661.

The phrase "at the instance of" is, at best, ambiguous, especially in the context of examining the potential liability of police officers for their participation in a criminal investigation that resulted in an indictment, and ultimately, an acquittal. We granted discretionary review to address that ambiguity. Although we agree that the Court of Appeals correctly determined that the case must be remanded for reconsideration in the trial court, directing the trial court to reconsider the matter under *Sykes* was improper. The malicious prosecution standard cited in *Sykes* differs from the elements of malicious prosecution set out in *Raine*, which was the prevailing authority under Kentucky law.

## C. The *Raine* articulation of malicious prosecution and the need for revision.

Malicious prosecution is an ancient and well-established common law cause of action with a long history in Kentucky jurisprudence. *See Frowman v. Smith*, 16 Ky. 7 (Ky. 1800) ("A person discharged from a prosecution for felony, without a trial on the merits, cannot, in an action for malicious prosecution, require proof of probable cause, until he shows express malice."); *Campbell v. Threlkeld*, 32 Ky. 425 (Ky. 1834) ("An action for prosecuting a malicious suit, is not sustained by mere proof, that the plaintiff in the suit complained of, was defeated; the malice and want of probable cause, must also be shown."). Historically, the tort of malicious prosecution has been disfavored because it runs contrary to the public policy supporting the exposure and prosecution of criminal conduct. *Lexington Cab Co. v. Terrell*, 137 S.W.2d 721, 724 (Ky. 1940). We express that disfavor by requiring strict compliance with the prerequisites for maintaining a malicious prosecution action. *Raine*, 621 S.W.2d at 899 (citing *Davis v. Brady*, 291 S.W. 412 (Ky. 1927)). This requirement of strict compliance is all the more reason for an unambiguous articulation of the essential elements of a malicious prosecution claim.

The elements of malicious prosecution have remained substantively unchanged over the past two centuries, but the language used to describe the elements has varied from time to time. *Raine v. Drasin* provides the most recent articulation of the tort's elements, and as noted above, it is one which requires clarification.

11

*Raine* identifies six elements of a malicious prosecution claim and enumerates them as follows:

(1)     the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings;

(2)     by, or at the instance, of the plaintiff [meaning *defendant* in the malicious prosecution action];

(3)     the termination of such proceedings in defendant's [meaning *plaintiff's* in the malicious prosecution action] favor;

(4)     malice in the institution of such proceeding;

(5)     want or lack of probable cause for the proceeding; and

(6)     the suffering of damage as a result of the proceeding.

621 S.W.2d 895, 899 (Ky. 1981).[3]

An immediately apparent shortcoming of the *Raine* articulation is its reference to "the plaintiff" in the underlying litigation. As noted in *Raine*'s first enumerated element, a malicious prosecution claim may arise from civil actions *and* criminal prosecutions. Of course, in every underlying criminal action, the "plaintiff" is the Commonwealth of Kentucky. *Raine*'s references to actions instituted by or at the instance of "the plaintiff" is unnecessary and ill-

---

[3] *Raine* unfortunately defines the elements of malicious prosecution with reference to the parties' status in the underlying action rather than the more conventional use of their status as parties in the malicious prosecution action. Thus, *Raine's* second element, "by, or at the instance of the plaintiff," actually refers to the *defendant* in the malicious prosecution action. Likewise, the third element identified in *Raine*, "termination of such proceedings in the defendant's favor," refers to the *plaintiff* in the malicious prosecution action. Other states have avoided this confusion. *See Parrott v. Plowden Motor Company*, 143 S.E.2d 607, 608 (S.C. 1965) (citing 34 Am. Jur. *Malicious Prosecution*, Sec. 6, p. 706); *Page v. Wiggins*, 595 So. 2d 1291, 1293 (Miss. 1992). 52 Am. Jur. 2d *Malicious Prosecution* § 8 (2016) currently lists the elements of a malicious prosecution claim, likewise defining the elements in terms of the parties' status relative to the malicious prosecution, rather than the underlying action. *See generally Marchbanks v. Young*, 139 P.2d 594, 597 (N.M. 1943) ( "It is a general rule that in an action for malicious prosecution . . . the plaintiff must allege a termination in his favor of the prosecution or suit complained of. 34 Am. Jur. Sec. 114, p. 771.") (internal quotation omitted). We prefer that convention and shall, henceforth, employ it.

suited to malicious prosecution cases arising from a criminal prosecution. Trial courts applying *Raine* must accommodate that discrepancy, as Judge Heyburn did in *Phat's Bar*, substituting the word "officer" for "plaintiff" when reciting the malicious prosecution elements. 918 F. Supp. 2d at 664.

*Raine*'s first element is relatively easy to apply. The "institution" of a judicial proceeding is, in the usual case, self-evident. The second element, whether the proceeding was instituted "by or at the instance of" the malicious prosecution defendant, is problematic because the meaning of "at the instance of" is imprecise. The word "instance" used in that context is no longer a part of the common English vernacular, and has become somewhat archaic. A general search of Kentucky jurisprudence discloses that it has most often been used to mean nothing more ardent than a simple request or suggestion.[4]

*Raine* cites *Cravens v. Long*, 257 S.W.2d 548 (Ky. 1953), as authority for the essential elements of a malicious prosecution claim. It is worth noting that the *Cravens* court did not employ the "at the instance of" phrasing. Instead, *Cravens* expressed the element as showing the defendant to be the "proximate and efficient cause of putting the law in motion against the plaintiff." *Id.* at 549. That terminology was echoed in *Phat's Bar*. 918 F. Supp. 2d at 664.

---

[4] *See Nahm v. Aden*, 1874 WL 6721 at *2 (Ky. Sept. 26, 1874) ("The court, at the instance of appellant, defined 'probable cause' . . . ."); *Calvert v. Brown & Williamson Tobacco Co.*, 465 S.W.2d 75, 76 (Ky. 1971) ("Dr. Paul J. Ross . . . had examined appellant (at the instance of her own physician) . . . ."); *Henderson v. Commonwealth*, 507 S.W.2d 454, 458 (Ky. 1974) ("On the day of the trial an appropriate officer . . . appeared in response to a subpoena duces tecum issued at the instance of Henderson's counsel . . . ."). *See also Branham v. Berry*, 4 Ky. L. Rptr. 412, 413 (Ky. Superior Oct. 2, 1882) ("It does not appear at whose instance the qualification was appended [to the malicious prosecution jury instructions].").

Numerous other cases preceding *Raine* did the same. *See, e.g., Ballard v. Cash*, 230 S.W. 48, 48-49 (Ky. 1921) ("It is thoroughly established in this state, at least, that a cause of action for malicious prosecution accrues, the other necessary elements being present, as a result 'of putting the law in motion' against the plaintiff . . . ."); *Cook v. Bratton*, 181 S.W. 1108, 1109 (Ky. 1916) ("[T]o sustain an action for malicious prosecution it must affirmatively appear . . . that the defendant was the proximate and efficient cause of putting the law in motion against the plaintiff in the action."); and *McClarty v. Bickel*, 159 S.W. 783, 784 (Ky. 1913) ("To sustain an action for malicious prosecution, it must affirmatively appear . . . that the [defendant] was the proximate and efficient cause of maliciously putting the law in motion.").

*Grau v. Forge* differentiated malicious prosecution from false imprisonment with this explanation:

> Suits for false arrest and imprisonment are very similar in their nature to those for malicious prosecution. The chief difference in the two cases consists in the persons proceeded against. In the one case the defendant is the person making the arrest, while in the other he is *the one who sets the law in motion and causes the arrest to be made.*

209 S.W. 369, 371 (Ky. 1919) (emphasis added).

Perhaps the most persistent description of the element to appear in our early jurisprudence is that the defendant "procured" the prosecution of the plaintiff. As early as 1818, *Carrico v. Meldrum*, 8 Ky. 224, 224 (Ky. 1818), stated, "In a declaration for malicious prosecution, the only material allegations

14

are, that *the prosecution was procured* by defendant maliciously and without probable cause." (Internal quotation marks omitted, emphasis added.)

*Wood v. Weir*, 44 Ky. 544, 550 (Ky. 1845) provided:

> Upon the whole, we think that the order . . . was *procured* without probable cause or legal excuse, and that from the want of probable cause or excuse, connected with the oppressive and illegal terms exacted in the bond, unaccounted for or explained, malice might and should have been implied by the jury, and the plaintiff has sustained damages to some amount.

(Emphasis added.)

*Branham v. Berry*, 4 Ky. L. Rptr. 412, 413 (Ky. Superior Oct. 2, 1882)[5], approved jury instructions providing that in order to find the defendant liable for malicious prosecution, the jury must believe that he "did cause the plaintiff's arrest and prosecution, or *procured* [the co-defendant] to do so." (Emphasis added.)

*Roberts v. Thomas*, 121 S.W. 961, 962 (Ky. 1909) states: "*The person who procured the warrant to be issued and thus caused the arrest* is liable to an action for malicious prosecution if he acted with malice and without probable cause." (Emphasis added.)

---

[5] **Citations to Kentucky's Superior Court are now unusual. The Superior Court was a three-judge, intermediate-level appellate court formed by the General Assembly in 1882 pursuant to authority granted by Kentucky's Third Constitution (1850-1892), to relieve a perceived backlog of cases pending before the Court of Appeals, then Kentucky's highest court.** *See* **Kurt X. Metzmeier,** *Selected Works of Kurt X. Metzmeier,* **History of the Courts of Kentucky, University of Louisville (December 2006.)**

15

Prior to *Raine*, the phrase, "at the instance of" used in connection with an arrest appears in several cases. *Meyer v. Louisville, St. L. & T. Ry. Co.*, 33 S.W. 98, 98 (Ky. 1895) ("The appellant was a conductor on a freight train of the appellee, and was arrested . . . at the instance of the company . . . ."); *Dean v. Noel*, 70 S.W. 406, 407 (Ky. 1902) ("The petition alleges that at the instance of appellant the warrant was issued, the arrest made, and trial had before the police judge, who held him to answer to the circuit court . . . . This affidavit or answer admits that appellee was arrested at the instance of appellant . . . ."). In context, these examples seemingly connote an activity no more insistent or compelling than a simple request.

In *First National Bank of Mayfield v. Gardner*, 376 S.W. 2d 311, 315 (Ky. 1964), our predecessor Court observed that Kentucky's malicious prosecution law in cases arising from an underlying civil action was consistent with *Restatement of Torts* § 674, which it cited as:

> One who initiates or procures the initiation of civil proceedings
> against another is liable to him for the harm done thereby, if
> (a) the proceedings are initiated
> (i) without probable cause, and
> (ii) primarily for a purpose other than that of securing the
> adjudication of the claim on which the proceedings are based, and
> (b) except where they are ex parte, the proceedings have
> terminated in favor of the person against whom they are brought.

*Gardner* also reiterated Section 674's explanation that:

> The person who initiates civil proceedings, is the person who sets
> the machinery of the law in motion whether he acts in his own
> name, or in that of a third person, or whether the proceedings are
> brought to enforce a claim of his own, or that of a third person.

*Id.* at 316. Notably, *Raine* also relied upon Section 674, which by then had been incorporated, unchanged, into the *Restatement (Second) of Torts* § 674 Wrongful Use of Civil Proceedings (1977).

*Raine* substituted the "by, or at the instance of" terminology in place of the more conventional phrasing found in the *Restatement* and in earlier Kentucky decisions. Our review persuades us that the *Raine* court did not intend to alter the traditional elements of the tort by changing the activity upon which liability may be predicated. As demonstrated above, our courts over the ages have expressed the element in different terms without substantively changing its meaning. Given the lack of clarity inherent in *Raine*'s use of "at the instance," we find it advantageous to revert to the more widely recognized language of the *Restatement* as it is entirely consistent with our historical application of the tort of malicious prosecution.

The *Restatement (First) of Torts* and the *Restatement (Second) of Torts* provide separate sections to explain malicious prosecution claims arising out of civil litigation and those arising from criminal prosecutions, although the essential elements of the two are virtually the same. Our review of Kentucky malicious prosecution law discloses that we have not differentiated malicious prosecution claims that arise from a prior civil action from those arising out of a criminal prosecution. *Raine* adhered to that tradition and we see no reason to depart from it.

*Restatement (Second) of Torts* § 653 Wrongful Prosecution of Criminal Proceedings (Malicious Prosecution) (1977) provides:

17

A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and (b) the proceedings have terminated in favor of the accused.[6]

*Restatement (Second) of Torts* § 674 Wrongful Use of Civil Proceedings (1977) provides:

One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

We see no substantive difference between Sections 653 and 674. Both predicate liability upon the defendant's role in initiating or procuring the prior litigation; both require the lack of probable cause; both require a showing that the defendant acted primarily for a purpose other than the proper adjudication of the underlying action, which is the essence of malice; and, both require a termination of the underlying claim in favor of the malicious prosecution plaintiff.[7] The *Restatement*'s articulation of the tort, consistent with the history

---

[6] Section 653's reference to "private person" can be read as excluding of public officials, including police officers, from liability for malicious prosecution. Such an exclusion has never been the law in Kentucky.

[7] Section 674(b) notes an exception to the "favorable termination" requirement: ex parte civil proceedings initiated or procured by a malicious prosecution defendant

18

of the tort in Kentucky, captures all of the elements cited in *Raine* but does so in a simpler, more comprehensible manner.

## D. The revised articulation of the elements of malicious prosecution

Consistent with our established tradition, our adaptation of the *Restatement* terminology is merged into a single statement applicable to malicious prosecution claims arising from either civil or criminal proceedings or administrative disciplinary proceedings. We hereby abrogate our expression of the malicious prosecution elements set out in *Raine v. Drasin* in favor of the following articulation. A malicious prosecution action may be established by showing that:

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;
2) the defendant acted without probable cause;
3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;
4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and
5) the plaintiff suffered damages as a result of the proceeding.

Under the solidly-established principles of the tort of malicious prosecution as it developed in Kentucky, "procuring" a criminal or civil judicial

---

need not have terminated in favor of the malicious prosecution plaintiff, presumably because the plaintiff would not have had an opportunity to participate in such adjudication. We are aware of no cases in which this exception has been applicable. An ex parte action for a restraining order under CR 65 would be an example of such an adjudication.

proceeding is synonymous with "being the proximate and efficient cause of putting the law in motion against another person."

In the instant case, the trial court rejected O'Daniel's claim and granted the summary judgment because none of the defendant officers had "instituted" the criminal charges against O'Daniel by arresting him, by filing of a criminal complaint against him, or by indicting him. We conclude, however, that "procuring" the criminal proceeding would encompass a wider range of conduct than allowed by the trial court. Certainly, it would include O'Daniel's claim that the officers induced the prosecutor to commence the proceedings by providing him with inaccurate, false, and misleading information.

Accordingly, we affirm the Court of Appeals insofar as it reversed the summary judgment and remanded the case for renewed consideration. However, upon remand, we direct the trial court to reconsider the officers' motion for summary judgment based upon the articulation of the elements of malicious prosecution set forth herein.

## III.  CONCLUSION

For the reasons set forth herein, we affirm the opinion of the Court of Appeals and remand this matter to the Franklin Circuit Court for further proceedings consistent with this opinion.

Minton, C.J.; Hughes, Noble, and Wright, JJ., concur. Cunningham, J., dissents by separate opinion in which Keller, J., joins.

CUNNINGHAM, J., DISSENTING: I respectfully, but forcefully dissent.

20

One would have to live on the dark side of the moon today to not know the following, unfortunate truth. Law enforcement officers are under siege. Today, with our majority opinion, we break down a lawful barrier that protects these brave men and women from frivolous and unwarranted lawsuits. From henceforth, our detectives and police officers must look over their right shoulder for physical danger, and over their left shoulder for time consuming and emotionally draining lawsuits. With this extra distraction impeding their steps, our state becomes less safe.

To begin with, the majority needlessly tinkers with the elements of malicious prosecution enumerated in the seminal case of *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). We could easily refine *Raine* by ways I will not belabor here. The majority's adoption of the Restatement's definition of the elements of malicious prosecution resurrects the element of "procurement" from the annals of our nineteenth century jurisprudence. I'm afraid it will prove problematic.

However, even if we apply the new criteria adopted by the majority for malicious prosecution, there are no genuine issues of material fact at issue here.

The officers never filed a criminal complaint or issued a citation against O'Daniel. They did not arrest him, nor did they procure an arrest warrant. The charge here was instituted by an indictment returned by the grand jury upon submission of the matter by the special prosecutor.

21

O'Daniel contends that the officers engaged in "prosecutor shopping, willful insubordination toward orders from the Justice Cabinet, and intentional withholding of exculpatory evidence from O'Daniel in the criminal case." Because I urge this Court to determine whether the officers "urgently solicited or insisted" that the prosecutor proceed with procuring an indictment, I am primarily concerned with what O'Daniel labels "prosecutor shopping." More precisely, I am concerned with the officers' contact with the Franklin County Commonwealth Attorney and the special prosecutor prior to O'Daniel's indictment. To further clarify, O'Daniel's allegations of insubordination and withholding of evidence are relevant here only to the extent that they relate to the officers' solicitation or insistence that the case proceed to the grand jury.

Our courts need to protect the public from abusive and unlawful police practices. We do not need to place a chilling and restrictive hand upon the shoulders of law enforcement officers who are passionate and energetic in their duties.

It is also important to note that the investigation of O'Daniel began only after a Department of Transportation employee notified the Kentucky State Police that she believed O'Daniel's vehicle registration application was fraudulent. When their investigation was complete, the officers visited Franklin County Commonwealth Attorney Larry Cleveland. Mr. Cleveland advised them that O'Daniel and the general counsel for the Justice Cabinet had been to see him earlier in the day. This created a conflict for him to stay on the

case. O'Daniel left a notebook with Mr. Cleveland which O'Daniel believed supported his actions. Mr. Cleveland gave that notebook to the officers.

Sometime thereafter, Mr. Cleveland wrote the Attorney General to "request the appointment of a special prosecutor with respect to an investigation by the Kentucky State Police involving Steve O'Daniel . . . ." The Attorney General accepted Mr. Cleveland's request and appointed Jefferson County Commonwealth Attorney, David Stengel, to the position. Mr. Stengel's deposition testimony in the present case is dispositive.

Mr. Stengel testified that it was his sole decision to present the Commonwealth's case against O'Daniel to the grand jury. Critically, Mr. Stengel also testified as follows:

> Counsel: Was there ever an occasion to where any of the state police officers **insisted** that this grand jury presentation go forward? (Emphasis added).

> Mr. Stengel: **No, sir**, they just wanted what they -- I think what they expressed to us is they wanted an independent eye to look at it because they did not like the reason they got from Mr. Cleveland. (Emphasis added).

In going to the prosecutors, the Appellants only wanted "an independent eye" to look at the case. Yet, they remain twisting in the wind years later under the oppressive lawsuit of malicious prosecution.

In response to additional questioning by Major Sapp's attorney, Mr. Stengel indicated that given the facts and the case with which he was presented, he believed there was sufficient probable cause to go forward to the grand jury. It is noteworthy that Mr. Stengel had reviewed O'Daniel's notebook, which O'Daniel believed supported his own actions, and found no evidence dissuading his decision to move forward with the case. The record also indicates that, upon the advice of his co-counsel, Tom Van DeRostyne, Mr. Stengel decided to charge O'Daniel with second-degree forgery. There is no evidence indicating that the officers participated in selecting that or any other charge.

Based on this evidence, it is clear that the officers did not urgently solicit or insist that either Mr. Cleveland or Mr. Stengel proceed with procuring an indictment. At most, the officers believed the case was worth "an independent eye to look at . . . ." Therefore, I cannot conclude that the criminal proceedings were instituted by the officers, or at the instance of the officers. *Raine*, 621 S.W.2d at 899.

Even when applying the majority's "procurement" standard, the officers are entitled to summary judgment in their favor based on the aforementioned evidence. For example, the majority presents an exhaustive account of the legal evolution of malicious prosecution yet provides only a fleeting reference to the relevant facts of the present case. More precisely, the majority holds that procuring a criminal proceeding "would encompass a wider range of conduct than allowed by the trial court." The majority then concludes that such

24

conduct "would include O'Daniel's claim that the officers induced the prosecutors to commence the proceedings by providing him with inaccurate, false, and misleading information."

Contrary to the majority's unsupported assumption, there is nothing in the record indicating that the officers urgently solicited, insisted, *or* procured this prosecution. Unless, of course, speaking with prosecutors concerning an open investigation is sufficient evidence of procurement. Every prosecution necessitates a dialog between law enforcement officers and the prosecutor. Thus, it is unwise and unjust to hold that evidence of any and every such congress, no matter how benign, is sufficient to overcome the defendant's motion for summary judgment. Yet that will be the result of the majority's decision here.

In addition to there being no evidence indicating procurement, O'Daniel has failed to prove malice and the absence of probable cause. Not only did the grand jury find probable cause to indict, but the trial judge found sufficient evidence for the case to go to the jury. Even when applying the new malicious prosecution standard cited by the majority, there is no evidence that the officers acted without probable cause or acted with malice. The latter requires "seeking to achieve a purpose other than to bring an offender to justice." There is no evidence whatsoever indicating malice.

Furthermore, I find nothing in the record indicating that the officers intentionally withheld any evidence. As previously discussed, Mr. Stengel testified that *given the facts and the case with which he was presented,* he

25

believed there was sufficient probable cause to go forward to the grand jury. Therefore, it is irrelevant for the purposes of the present case whether, prior to proceeding with the indictment, Mr. Stengel was informed of all the evidence later introduced at trial. And while there is some evidence indicating that high ranking Justice Cabinet officials ordered KSP to release O'Daniel's car from impound and to turn over the case to local authorities, it is unclear whether the officers involved here received such orders, specifically Major Sapp's subordinates, Sergeants Martin and Motley.

The majority correctly takes note that "[h]istorically the tort of malicious prosecution has been disfavored." This nearly ten-year-old case is a "poster child" as to why. Therefore, I respectfully suggest that the majority's conclusion is misguided and does a great injury to our law enforcement officers.

In short, if summary judgement was not warranted in this case, it strains my imagination to conjure a situation where it would be. With this decision our Court virtually eliminates the possibility of summary judgment on behalf of officers in malicious prosecution cases. The police officer, already burdened with heavy life and death responsibilities, will always be exposed to a jury when acquitted defendants file malicious prosecution lawsuits. The criminal defendant and the conscientious police officer will merely trade seats in the court room.

Therefore, I vigorously dissent.

Keller, J., joins.

26

COUNSEL FOR APPELLANTS:

William E. Johnson
Johnson Bearse, LLP

Lyndol Scott Miller
Frankfort, KY 40601

Heidi Beth Engle
Charles Johnson
Johnson and Engle, PSC


COUNSEL FOR APPELLEES:

Thomas E. Clay
Andrew Thomas Lay
Clay Daniel Walton & Adams, PLC


COUNSEL FOR AMICUS CURIAE KENTUCKY ASSOCIATION OF COUNTIES, INC.:

Walter Michael Troop
Attorney At Law

John Estill
Fox, Wood, Wood & Estill

Timothy A. Sturgill
Kentucky Association of Counties, Inc., General Counsel

COUNSEL FOR AMICUS CURIAE KENTUCKY SHERIFFS' ASSOCIATION, INC.:

Walter Michael Troop
Attorney At Law

John Estill
Fox, Wood, Wood & Estill

# Supreme Court of Kentucky

2014-SC-000373-DG

GARY MARTIN                                                    APPELLANT

                    ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2012-CA-001961
            FRANKLIN CIRCUIT COURT NO. 07-CI-00820

STEPHEN O'DANIEL                                              APPELLEE

AND

                        2014-SC-000389-DG

MIKE SAPP                                                     APPELLANT

                    ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2012-CA-001961
            FRANKLIN CIRCUIT COURT NO. 07-CI-00820

STEPHEN O'DANIEL                                              APPELLEE

AND

                        2014-SC-000394-DG

BOBBY MOTLEY                                                  APPELLANT

                    ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2012-CA-001961
            FRANKLIN CIRCUIT COURT NO. 07-CI-00820

STEPHEN O'DANIEL                                              APPELLEE

## ORDER CORRECTING

The Opinion of the Court by Justice Venters rendered, September 22, 2016 is substituted in full to correct: The vote line on page 20 which should read: Minton, C.J.; Hughes, Noble, and Wright, JJ., concur. Cunningham, J., dissents by separate opinion in which Keller, J., joins. Said correction does not affect the holding of the original Opinion of the Court.

ENTERED: September 22, 2016.

CHIEF JUSTICE