RENDERED:  DECEMBER 2, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0485-MR

SHERONDA BAILEY, AS MOTHER
AND NEXT FRIEND OF
KATLIN EDWARDS                                                                APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MITCH PERRY, JUDGE
                    ACTION NO. 17-CI-002515


CHRISTOPHER COLLINS; FLOYD
ALEXANDER; AND JEFFERSON
COUNTY BOARD OF EDUCATION                                     APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND MAZE, JUDGES.

MAZE, JUDGE:  Sheronda Bailey, as mother and next friend of Katlin Edwards

(Bailey), appeals from summary judgments of the Jefferson Circuit Court

dismissing her statutory, negligence, and battery claims against the Jefferson

County Board of Education (Board), Assistant Principal Christopher Collins (A.P. Collins), and Floyd Alexander (Alexander).  First, we conclude that this appeal should not be dismissed for failure to name an indispensable party.  We next conclude that Bailey's statutory appeal from the Board's action is moot.  We further agree with the trial court that A.P. Collins and Alexander were acting within the scope of their discretionary duties and that Bailey failed to show that they were acting in bad faith.  Finally, in the absence of a showing of bad faith or malice, Bailey was not entitled to proceed on the battery claims against A.P. Collins and Alexander.  Hence, we affirm the summary judgments.

The claims in this case arise out of incidents which occurred at Iroquois High School on January 27, 2017.  While the parties disagree about the details of those incidents, the basic outline of those events are as follows.  At the time, Katlin Edwards (Edwards) was in eleventh grade at Iroquois High School, which is part of the Jefferson County Public Schools (JCPS) system.  Following a pep rally, multiple fights broke out among the students.  Edwards was in the auditorium waiting for her bus.  Along with numerous other students, she attempted to exit the auditorium into the lobby.

As Edwards was attempting to leave, she was walking behind A.P. Collins.  A.P. Collins testified that he felt a student push him forward from behind.  He turned around and yelled at Edwards, "Pushing an A.P. is six days"; a threat of

a six-day suspension from school.  A.P. Collins states that he told Edwards to stop pushing and sit back down.  Edwards did not initially believe that A.P. Collins was addressing her.  In response to A.P. Collins' statement, Edwards stepped aside but continued through the doorway.

Edwards denies ever pushing A.P. Collins, while A.P. Collins states that Edwards pushed him two more times.  In any event, a scuffle ensued, during which A.P. Collins attempted to restrain Edwards.  Security Guard Alexander arrived and assisted A.P. Collins in pinning Edwards against a wall.  Edwards alleges that she suffered injuries as a result of the restraint used by both A.P. Collins and Alexander.

Following this incident, Edwards was escorted to the Iroquois school offices, where she was met by her mother, Bailey, and the principal, Clay Holbrook.  Later that day, Bailey and Edwards were advised that Principal Holbrook had imposed a ten-day suspension on Edwards.  Edwards filed an appeal of the action as provided by the JCPS Handbook, but her appeals were denied at each level.

On May 19, 2017, Bailey, on behalf of Edwards, filed a complaint naming the Board, A.P. Collins, and Alexander.  The complaint asserted claims for:  (1) judicial review pursuant to KRS[1] 13B.150 of the final order affirming the

---

[1] Kentucky Revised Statutes.

suspension; (2) negligence by A.P. Collins and Alexander in their use of force to restrain Edwards; and (3) battery by A.P. Collins and Alexander in their use of force to restrain Edwards.

On April 27, 2020, Bailey filed a motion for summary judgment on the claim against the Board under KRS Chapter 13B. Bailey argued she was entitled to a judgment on that claim due to the Board's failure to file the administrative record, as required by KRS 13B.140(3). The Board filed a reply and a cross-motion for summary judgment, arguing that an informal hearing resulting in a suspension was not subject to judicial review under KRS Chapter 13B. On September 29, 2020, the trial court denied Bailey's motion and granted the Board's motion for summary judgment. The trial court agreed with the Board that the suspension procedures do not fall under the scope of a formal administrative hearing as defined by KRS 13B.010(2).

Thereafter, A.P. Collins and Alexander filed a motion for summary judgment, arguing that the claims based on negligence and battery were barred by qualified immunity. They argued that their actions to restrain Edwards were discretionary duties made in good faith. Bailey responded that their use of force was a ministerial function not subject to qualified immunity. In an order entered on April 7, 2021, the trial court agreed with A.P. Collins and Alexander and

dismissed the remaining claims. This appeal followed. Additional facts will be set forth below as necessary.

As an initial matter, the Appellees have moved to dismiss this appeal for failure to join an indispensable party. On May 19, 2017, the original complaint in this action was filed, naming as plaintiff "Sheronda Bailey, Individually and as mother and Next Friend of [Katlin Edwards]." At the time the complaint was filed, Edwards was still a minor. On April 27, 2020, Bailey filed a motion pursuant to CR[2] 15.01 to file an amended complaint substituting Edwards as the plaintiff. The motion stated that Edwards had reached the age of majority.

The trial court heard the motion on June 15, 2020. However, no order appears in the record granting the motion to substitute parties. Nevertheless, the Board, A.P. Collins, and Alexander filed an answer to the amended complaint. Edwards was listed as plaintiff in the parties' subsequent pleadings, but Bailey continued to be listed as plaintiff in the trial court's orders. The notice of appeal named Bailey, individually and in her capacity as mother and next friend of Edwards, as Appellant.

The Appellees argue that the notice of appeal was defective because Bailey ceased to be the plaintiff or real party in interest. As a result, they contend

---

[2] Kentucky Rules of Civil Procedure.

that this Court lacks jurisdiction to consider the merits of the appeal.  Under the circumstances presented in this case, we disagree.

"[T]he notice of appeal is the means by which an appellant invokes the appellate court's jurisdiction."  *Nelson County Bd. of Educ. v. Forte*, 337 S.W.3d 617, 626 (Ky. 2011) (citation omitted); CR 73.03.  An appellant's "failure to name an indispensable party in the notice of appeal is a jurisdictional defect that cannot be remedied."  *Forte*, 337 S.W.3d at 626 (internal quotation marks and citation omitted).  "An indispensable party is one whose absence prevents the Court from granting complete relief among those already parties . . . [or] one whose interest would be divested by an adverse judgment."  *Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 387 (Ky. App. 2004) (citations omitted).  Accordingly, absent any indispensable party, we lack jurisdiction to hear the appeal.  *Forte*, 337 S.W.3d at 626.

But as noted above, the trial court never entered an order granting Edwards' motion to substitute as a party.  Circuit courts speak "only through written orders entered upon the official record."  *Kindred Nursing Centers Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010).  *See also Oakley v. Oakley*, 391 S.W.3d 377, 378 (Ky. App. 2012).  Furthermore, a reviewing court "cannot infer rulings not made explicit by the trial court."  *Erie Ins. Exchange v. Johnson*, 647 S.W.3d 198, 202 (Ky. 2022).  In the absence of an order substituting

-6-

Edwards as plaintiff, Bailey remained the only plaintiff before the trial court, as well as the only party who could have filed a notice of appeal. Therefore, Edwards was not an indispensable party to this appeal.

Turning to the merits, Bailey argues that the Board, A.P. Collins, and Alexander were not entitled to summary judgment. "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. *Steelvest*, 807 S.W.2d at 480. The trial court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. *Id.* Since a summary judgment involves no fact-finding, this Court's review is *de novo*, in the sense that we owe no deference to the conclusions of the trial court. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

The first issue concerns the trial court's dismissal of Bailey's appeal of Edwards' suspension pursuant to KRS Chapter 13B. The trial court found that an informal adjudicatory proceeding resulting in a suspension is not an "administrative hearing" subject to an appeal under that Chapter. Bailey notes that Section 2 of the Kentucky Constitution bars governmental agencies from arbitrary action. Bailey argues that due process requires an opportunity for judicial review of the Board's action in suspending Edwards, even if it is characterized as an informal proceeding.

However, we must conclude that any appeal arising under KRS Chapter 13B has become moot. "A 'moot case' is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy." *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014) (emphasis in original) (quoting *Benton v. Clay*, 192 Ky. 497, 233 S.W. 1041, 1042 (1921)). In general, an appellate court is without jurisdiction to reach the merits of a moot appeal as the judicial power extends only to justiciable controversies. *Kentucky High School Athletics Ass'n v. Runyon*, 920 S.W.2d 525 (Ky. 1996).

Here, it is undisputed that Edwards already served the suspension, and she is no longer a student in the JCPS system. Edwards is no longer subject to the Board's authority and there is no allegation that she will suffer any future

consequences from the suspension. Consequently, neither this Court nor the trial court could grant either Bailey or Edwards any meaningful relief within the scope of KRS Chapter 13B.

We recognize that a technically moot case may nonetheless be adjudicated on its merits where the nature of the controversy is such that "the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and . . . there is a reasonable expectation that the same complaining party would be subject to the same action again." *Bolton v. Irvin*, 373 S.W.3d 432, 434 (Ky. 2012) (quoting *Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky. 1992)). Second, we may review the matter under the public interest exception set out by the Kentucky Supreme Court in *Morgan*, *supra*. A court may review an otherwise moot case when "(1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." 441 S.W.3d at 102 (citation omitted). We conclude that neither exception is applicable.

In the case of the first exception, Edwards is no longer a student in the JCPS system, so there is no reasonable expectation that Edwards would be subject to the same type of action again. As to the second exception, we agree that the question presented is of a public nature. But there is no showing of a need for an authoritative determination or a likelihood of future recurrence of the question.

And if the question should again arise, it may be addressed in the appropriate case. Therefore, we decline to address this matter further.

Bailey next argues that the trial court erred by dismissing her claims against A.P. Collins and Alexander based on qualified immunity. As discussed above, we are obligated to view the facts in the light most favorable to the party opposing the motion for summary judgment. *Steelvest*, 807 S.W.2d at 480. However, the application of immunity is a question of law, which this Court reviews *de novo*. *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006); and *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016), *as modified on denial of reh'g* (Aug. 24, 2017).

Generally, qualified official immunity is "immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions." *Patton*, 529 S.W.3d at 723 (quoting *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001)). "Qualified immunity applies only to the negligent performance of duties that are discretionary in nature." *Id.* at 723-24. In contrast, qualified immunity is not provided for the negligent performance of a ministerial act. *Id.* at 724.

The Court in *Patton* further explained that a ministerial duty is one that "requires only obedience to the orders of others." *Id.* (citations omitted). In other words, a duty is ministerial "when the officer's duty is absolute, certain, and

imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* "The point is that a government official performing a ministerial duty does so without particular concern for his own judgment" or, stated another way, "the act is ministerial 'if the employee has no choice but to do the act.'" *Id.* (quoting *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014)).

In contrast, discretionary acts are "good faith judgment calls made in a legally uncertain environment" and involve "personal deliberation, decision, and judgment[.]" *Yanero*, 65 S.W.3d at 522. Particularly pertinent to the issues in this appeal is *Yanero*'s explanation of the proper application of the doctrine of qualified immunity:

> But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am. Jur. 2d, *Public Officers and Employees*, § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employee's authority. *Id.* § 309; *Restatement (Second) Torts*, *supra*, § 895D cmt. g. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed.

*Id.*

-11-

In this case, the trial court concluded that A.P. Collins and Alexander acted within the scope of their discretionary authority when they restrained Edwards. The court found, unlike in *Yanero*, their decision to restrain Edwards did not involve enforcement of a known rule about when and how to apply restraint. Bailey disagrees, noting that the general supervision of students is usually regarded as ministerial in nature, "as it requires enforcement of known rules." *Patton*, 529 S.W.3d at 727 (quoting *Marson*, 438 S.W.3d at 301). Bailey argues that school staff's decisions on when and how to employ physical restraint of students are likewise subject to known rules. Thus, Bailey takes the position that those duties are inherently ministerial, rather than discretionary.

We agree with Bailey that there are rules and protocols on when physical restraint may be used on a student in public school. 704 KAR[3] 7:160 § 3(3)(a) provides that physical restraint may only be used if "[t]he student's behavior poses an imminent danger of physical harm to self or others[.]" Moreover, physical restraint may only be used if "[l]ess restrictive behavioral interventions have been ineffective in stopping the imminent danger of physical harm to self or others, except in the case of a clearly unavoidable emergency situation posing imminent danger of physical harm to self or others[.]" 704 KAR 7:160 § 3(3)(d). Finally, physical restraint may only be used if the school

---

[3] Kentucky Administrative Regulations.

personnel implementing the restraint is "appropriately trained as required by Section 6(3) of [the] regulation, except to the extent necessary to prevent physical harm to self or others in clearly unavoidable emergency circumstances where other school personnel intervene and summon trained school personnel as soon as possible." 704 KAR 7:160 § 3(3)(e).

"A ministerial duty may involve ascertainment of . . . facts, and an officer may be permitted some discretion with respect to the means or method to be employed[.]" *Patton*, 529 S.W.3d at 724 (internal quotation marks and citations omitted). But the focus is whether a government official performing a ministerial duty does so without particular concern for his own judgment. *Id.* In contrast, a duty is discretionary because it is "so situation specific, and because it requires judgment rather than a fixed, routine performance[.]" *Marson*, 438 S.W.3d at 299.

Here, the decisions by A.P. Collins and Alexander to use physical restraint against Edwards involved an exercise of their judgment within the scope of the established policies within a very specific situation. Their actions were the result of the personal deliberation, decision, and judgment that are the hallmarks of a discretionary series of actions. Therefore, we agree with the trial court that their actions were discretionary in nature.

At that point, the burden then shifted to Bailey to prove that A.P. Collins and Alexander acted in bad faith. *See Rowan County*, 201 S.W.3d at 475-

Here, Bailey made no such showing. As a result, the trial court properly dismissed her negligence claims against A.P. Collins and Alexander.

Bailey separately argues that the trial court erred by dismissing the battery claims based on qualified immunity. Battery is "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him[.]" *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000). Moreover, battery is "an intentional tort; it is not committed by a negligent act." *Id.* at 656 (citation omitted). Qualified immunity is typically not available for intentional torts for which malice or bad faith is an element. *Martin v. O'Daniel*, 507 S.W.3d 1, 5-6 (Ky. 2016).

But as discussed above, Bailey had the burden of showing that A.P. Collins and Alexander acted with malice or in bad faith while using physical restraint against Edwards. Here, there is no such showing, nor does Bailey point to any evidence of record that their touching of Edwards was otherwise unlawful. Acting with malice and acting in good faith are mutually exclusive. *Id.* For this reason, the trial court properly granted summary judgment on the battery claim.

Accordingly, we affirm the summary judgments of the Jefferson Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Teddy B. Gordon
Andrew E. Mize
Louisville, Kentucky

BRIEF FOR APPELLEES:

Byron E. Leet
John W. Woodard, Jr.
Julie Laemmle Watts
Marianna J. Michael
Louisville, Kentucky