RENDERED: DECEMBER 19, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000161-TG

FINAL

DATE 4/30/20

a Luther son

STATE OF OHIO AND                                                APPELLANTS
JOSEPH W. TESTA,
TAX COMMISSIONER OF OHIO


V.

ON TRANSFER FROM COURT OF APPEALS
CASE NO. 2018-CA-000484
GREENUP CIRCUIT COURT NO. 17-CI-00311
HONORABLE ROBERT B. CONLEY, JUDGE


GREAT LAKES MINERALS, LLC                                        APPELLEE


**OPINION OF THE COURT BY JUSTICE KELLER**

**REVERSING AND REMANDING**

Appellants, State of Ohio and Joseph W. Testa, Tax Commissioner of

Ohio, appeal an order of the Greenup Circuit Court denying their motion to

dismiss Great Lakes Minerals, LLC's suit against them. For the following

reasons, we reverse the decision of the Greenup Circuit Court and remand with

instructions to dismiss all claims.

# I. BACKGROUND

Great Lakes Minerals, LLC (hereinafter, Great Lakes) is a mineral processing company[1] that sells minerals to buyers at its Greenup County, Kentucky plant. Great Lakes maintains that it sells its products in Kentucky; all transactions, including payment and delivery of goods, occur in Kentucky; Great Lakes does not have a physical presence in Ohio; and Great Lakes neither directly nor indirectly delivers its products to the State of Ohio.

Stated very simply, Ohio has created a commercial activity tax (CAT) that taxes persons who do business and have a substantial nexus to Ohio. O.R.C.[2] 5751.02(A). Ohio's Department of Taxation (Department) may issue a CAT assessment to an out-of-state business for outstanding liability to Ohio arising from transactions with an Ohio company. Businesses are provided administrative remedies to protest CAT assessments to the Tax Commissioner of Ohio, then the Ohio Board of Tax Appeals, and then the Ohio appellate courts. O.R.C. 5751.09; O.R.C. 5717.02; ORC 5717.04.

Ohio determined that between 2009 and 2016, Great Lakes sold over $104 million in minerals that were then shipped to Ohio addresses. The Department issued a CAT assessment against Great Lakes for $325,000. Great Lakes paid a portion of the assessment but petitioned for reassessment with the Commissioner, challenging the assessment's validity.

---

[1] According to the business records of the Kentucky Secretary of State, Great Lakes is a limited liability company organized under the laws of Delaware.

[2] Ohio Revised Code.

One month after protesting to the Commissioner, Great Lakes sued Ohio and Joseph W. Testa, Ohio's Tax Commissioner, in his official and individual capacities, in Greenup Circuit Court. Great Lakes sought: (1) a declaratory judgment that it is not subject to Ohio's CAT; (2) monetary relief pursuant to 42 U.S.C.A. § 1983 for the forced collection of taxes not owed, in violation of the Ohio and United States Constitutions; and (3) a determination pursuant to CR[3] 60.03 that it would be inequitable to require Great Lakes to defend an action in a foreign state. Ohio moved to dismiss Great Lakes' complaint on grounds of sovereign immunity, qualified immunity, comity, lack of personal jurisdiction, and failure to exhaust administrative remedies. The Greenup Circuit Court denied Ohio's Motion to Dismiss in a two-sentence order, and Ohio filed a Notice of Appeal with the Court of Appeals. Ohio moved to transfer jurisdiction over that interlocutory appeal to this Court, which this Court granted. We then abated this case pending the Supreme Court of the United States' decision in *Franchise Tax Board of California v. Hyatt*, 139 S.Ct. 1485 (2019) (hereinafter "*Hyatt III*"). Following the rendition of *Hyatt III*, this Court granted the Appellants' motion for leave to file supplemental briefs. Supplemental briefing by the parties has been completed, and the matter is ripe for consideration.

---

[3] Kentucky Rules of Civil Procedure.

3

## II. ANALYSIS

The State of Ohio argues that it is protected by sovereign immunity under *Hyatt III*. Testa argues that he is entitled to the same sovereign immunity as Ohio in his official capacity and qualified official immunity in his personal capacity. Great Lakes, on the other hand, argues that sovereign immunity does not apply to actions for declaratory or injunctive relief and that sovereign immunity does not apply to the appellants in the capacity in which they were sued pursuant to 42 U.S.C.A. § 1983. The question of whether a defendant is protected by sovereign immunity, governmental immunity, or official immunity is a question of law. *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006). This Court reviews questions of law *de novo*. *Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007).

### A. State of Ohio

We will first address whether the State of Ohio is protected by the doctrine of sovereign immunity. Ohio relies, in large part, on *Hyatt III* to argue that it is entitled to sovereign immunity protection. In that case, Hyatt sued the Franchise Tax Board of California in Nevada state court for various torts the Tax Board allegedly committed during a tax audit. *Hyatt III*, 139 S.Ct. at 1491. After discussing the United States Constitution at length as well as the intent of the framers, the United States Supreme Court held that the Tax Board of California was protected by sovereign immunity and could not be sued in Nevada state court. *Id.* at 1492. Great Lakes, however, attempts to distinguish the case at bar from *Hyatt III* because Hyatt was seeking a monetary award of

4

damages from California. Great Lakes, conversely, is only seeking monetary damages against Testa in his individual capacity and declaratory, injunctive, and equitable relief against Ohio and Testa in his official capacity. Great Lakes argues that the United States Supreme Court's 2016 decision in *Franchise Tax Board of California v. Hyatt*, 136 S.Ct. 1277 (hereinafter *"Hyatt II"*), is actually the controlling authority.[4]

In *Hyatt II*, the predecessor of *Hyatt III*, the Supreme Court reversed a monetary award against the Franchise Tax Board of California, an out-of-state agency, that was greater than that which Nevada would award in a similar suit against its own state agency. *Id.* The Court concluded that in awarding these higher-than-otherwise-allowed damages, Nevada "applied a special rule of law that evinces a policy of hostility toward California." *Id.* at 1281 (internal quotation marks omitted). *Hyatt II* does not control our decision here today.

*Hyatt III*, however, does control, at least in part, our decision in this case. The United States Supreme Court in *Hyatt III* held, unequivocally, that under

---

[4] Great Lakes makes this argument by attempting to cite to *Hyatt III*'s summary of the case's history. Great Lakes, in its supplemental brief to this Court, includes a block quote purportedly from *Hyatt III*, emphasizing the sentence, "This [United States Supreme] Court reversed, holding that the Full Faith and Credit Clause required Nevada courts to grant the Board the same immunity that Nevada agencies enjoy." (Internal italics omitted). It does not include a pin cite to the page in the U.S. Supreme Court decision from which this quote is taken. The reason for this is that the quote is not actually from the U.S. Supreme Court's opinion. Rather, it was taken from the Syllabus of the opinion. The Syllabus contains a footnote which says, "The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader." This Court notes that the Syllabus of an opinion of the U.S. Supreme Court is wholly inappropriate to quote and should never be cited as controlling authority. Parties should take great care to refrain from doing so in the future.

the United States Constitution, "States retain their sovereign immunity from private suits brought in the courts of other States." 139 S.Ct. at 1492. Great Lakes argues that the word "retain" in the above quoted sentence dictates that this Court look to our general immunity principles as applied to declaratory and injunctive relief. However, the U.S. Supreme Court went on to say, "[A]lthough the Constitution assumes that the States retain their sovereign immunity except as otherwise provided, it also fundamentally adjusts the States' relationship with each other and curtails their ability, as sovereigns, to decline to recognize each other's immunity." *Id.* at 1493. The Court then went on to say, "Interstate immunity, in other words, is 'implied as an essential component of federalism.'" *Id.* at 1498 (quoting *Nevada v. Hall,* 440 U.S. 410, 430-31 (1979) (Blackmun, J., dissenting)).

The U.S. Supreme Court in *Hyatt III* made no distinction between claims seeking monetary damages and claims seeking other types of relief. "The Constitution...embeds interstate sovereign immunity within the constitutional design." *Id.* at 1497. Accordingly, the State of Ohio is protected by sovereign immunity, and Great Lakes' claims against it should have been dismissed. We, therefore, reverse the Greenup Circuit Court's denial of the State of Ohio's motion to dismiss.

**B. Joseph Testa in his official capacity**

We next address whether Joseph Testa is immune from suit in his official capacity as Tax Commissioner of Ohio. In general,

> [o]fficial-capacity suits...represent only another way of pleading an
> action against an entity of which an officer is an agent.... As long

6

> as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal citations and quotations omitted). As such, Testa is entitled to the same sovereign immunity that protects the state of Ohio, and therefore Great Lakes' claims against him in his official capacity should have been dismissed. We, therefore, reverse the Greenup Circuit Court's denial of Testa's motion to dismiss the claims brought against him in his official capacity as Tax Commissioner of Ohio.

### C. Joseph Testa in his personal capacity

Having concluded that both the state of Ohio and Joseph Testa in his official capacity are immune from suit, we turn to the remaining question before us, namely, whether immunity protects Joseph Testa in his personal capacity. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165. As such, the only claim against Testa in his personal capacity is that for monetary relief pursuant to 42 U.S.C.A. § 1983 for the alleged forced collection of taxes not owed, in violation of the Ohio and United States Constitutions.

> On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.... When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law.

*Id.* at 166–67 (internal citations omitted).

The United States Supreme Court time and again has recognized that § 1983 "was not meant to effect a radical departure from ordinary tort law and

the common-law immunities applicable in tort suits." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). Our Court recently reaffirmed this principle when we stated, "As explained in *Rehberg*, the scope of immunity available to state government officials in a federal civil rights action under § 1983 derives from the state's common law immunity doctrine." *Martin v. O'Daniel*, 507 S.W.3d 1, 5 (Ky. 2016). Thus, to determine whether Testa, in his personal capacity, is immune from suit, we must turn to the common law doctrine of immunity. Any immunity determination by this Court would require us not only to evaluate Testa's actions but also to interpret Ohio tax law.

Because our decision would ultimately turn on Ohio law, we feel compelled to consider the doctrine of comity. This doctrine "is one of deference and respect among tribunals of overlapping jurisdiction; in accordance with comity, the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." 16 AM. JUR. 2D *Conflict of Laws* § 11 (2019). For example,

> [i]f Kentucky fails to respect that a cause of action accrues in a foreign jurisdiction, like New York, although the final event necessary for the cause of action occurred in New York, Kentucky shows disrespect for New York's territoriality in derogation of comity principles that the Kentucky Supreme Court may value.

*Combs v. Int'l Ins. Co.*, 354 F.3d 568, 591 (6th Cir. 2004).

The Supreme Court of the United States has applied the doctrine of comity in the context of a § 1983 action for the unlawful administration of a state's tax system, ultimately dismissing such claims. For example, in *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100 (1981), the

8

Supreme Court held that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts," including actions for damages. *Id.* at 116. In doing so, the *McNary* Court explained the reasoning behind federal courts' deference to state tax administration by citing with approval a concurring in part and dissenting in part decision by Justice Brennan:

> The special reasons justifying the policy of federal noninterference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law.

*Id.* at 108, n.6 (quoting *Perez v. Ledesma*, 401 U.S. 82, 128, n.17 (1971) (Brennan, J., concurring in part and dissenting in part)).

Though *McNary* addressed comity between federal and state courts, we feel compelled to apply similar principles to the case at hand. As noted above, the question before us—whether Testa may be held personally liable for violations of § 1983—turns on Ohio law. In essence, then, we are required to determine whether Testa's imposition of the CATS assessment on Great Lakes was consistent with Ohio law. As the *McNary* Court explained, any declaration from this Court about the lawfulness of Testa's application of Ohio law would be intrusive and could disrupt Ohio's state tax administration.

9

In sum, we believe that Ohio's state courts are better suited to efficiently evaluate and apply Ohio law to this issue. Should the case progress further, Ohio's courts would also be better suited to evaluate the facts, and to consider whether Testa caused the deprivation of a constitutional right while acting under the color of Ohio state law. Accordingly, relying on the principle of comity, we hereby dismiss Joseph Testa in his personal capacity.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the Greenup Circuit Court and remand to the Greenup Circuit Court for dismissal of the claims.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter, and Wright, JJ., sitting. All concur. Nickell, J., not sitting.


COUNSEL FOR APPELLANTS:

Thomas Edward Madden
Daniel W. Fausey
Assistant Attorneys General


COUNSEL FOR APPELLEE:

Thomas Dulaney Bullock
Robert V. Bullock
James Roscoe Stinetorf
Bullock & Coffman, LLP

# Supreme Court of Kentucky

## 2018-SC-000161-TG

STATE OF OHIO AND JOSEPH W. TESTA,                    APPELLANTS
TAX COMMISSIONER OF OHIO


|        | ON TRANSFER FROM COURT OF APPEALS |
|--------|-----------------------------------|

V.

ON TRANSFER FROM COURT OF APPEALS
CASE NO. 2018-CA-000484-MR
GREENUP CIRCUIT COURT NO. 17-CI-00311
HONORABLE ROBERT B. CONLEY, JUDGE


GREAT LAKES MINERALS, LLC                              APPELLEE


## ORDER DENYING PETITION FOR REHEARING AND MODIFICATION

The Petition for Rehearing and Modification, filed by the Appellee, of the

Opinion of the Court, rendered December 19, 2019, is DENIED.

All sitting. All concur.

ENTERED: April 30, 2020.


_____
CHIEF JUSTICE